HEAD *v.* THE STATE.

No. 6855.   JULY 30, 1929.

*Porter & Mebane,* for plaintiff in error.

*George M. Napier, attorney-general, James F. Kelly, solicitor-general,* and *T. R. Gress, assistant attorney-general,* contra.

RUSSELL, C. J. While concurring in the judgment of reversal and the principles I have stated in headnotes 2 and 3, I dissent from the ruling stated in the first headnote as expressive of the opinion of the majority of the court. There is no substantial difference in the substance of the request for instruction presented

in *Hall* v. *State, 133 Ga.* 177, 180 (65 S. E. 400), and the instruction requested in the case before us, though in the request in the *Hall* case there was a statement expressly negativing the inference that the defendant acted in a spirit of revenge. In the case at bar it is my opinion that the language employed, by necessary implication, equally divorces that apprehended danger which is apparent at the time and in the circumstances which surround a cool and courageous man as well as effectually justify a homicide as would a fear aroused by a real danger entertained by a defendant. The conditions proposed in the request for instruction entirely negatived and are incompatible with a killing in a spirit of revenge, and in my opinion it is not necessary to expressly state to the jury in this connection that it must appear that the killing was not done in a spirit of revenge. For this reason I can not agree with the majority that the request for instruction "did not state an accurate and correct principle of law." I am further of the opinion that, even without a request, the principle contained in the request for instruction in this case should have been given in charge to the jury, in view of the fact that the court undertook to charge upon the doctrine of reasonable fears; and having given two correct instructions to which I shall presently refer upon the subject of reasonable fears, the instruction should have been completed by the judge of his own motion, calling the attention of the jury to the principle that an apparent danger may sometimes justify a homicide by a reasonable and courageous man who honestly entertains a reasonable fear, as completely as if the apprehended danger was in fact real. The instructions which were given by the court, as contained in the charge, were not suggested by request, so far as appears in this record. It may therefore be presumed that the principles correctly stated were given in charge by the court of his own motion. However, it will be noted, in reading the instructions of the court as contained in the charge, that the court excluded any defense based upon the reasonable fears of a man reasonably cool and courageous, who, believing his life to be in danger, may commit a homicide, even though the accused may not actually be in danger of losing his life or of having a felony committed upon him. In each instruction as given by the court the jury were confined entirely to their opinion, at the time of the trial, as to whether the accused was really in danger at the time he stabbed the deceased.

The first instruction tells the jury that if they believe "that the deceased intended or endeavored by violence or surprise to commit a felonious assault upon the person of the defendant, if you should find that to be the truth," then the defendant would be justifiable and should not be convicted of any offense. In the second instruction the court charged the jury: "If you should find from the evidence in this case that as a matter of fact the deceased, at the time the defendant cut and stabbed him, was advancing on the defendant with an open knife, .. . and the deceased was attempting to kill the defendant with such knife and the defendant killed the deceased under such circumstances, then it would be your duty to acquit the defendant." This instruction excluded any reference to the honest belief of the defendant (if he entertained such belief from the circumstances as they appeared to him) that his life was in danger or that a felony was about to be committed upon him, but it required the defendant to satisfy the jury that the deceased was advancing on the defendant with an open knife, when the jury may .have believed from the statement of the defendant that he knew that the deceased was armed with an open knife, and the evidence of witnesses shows that the deceased did have a very large and dangerous knife open in his hands immediately after the cutting.. It was for the jury to say whether the accused, knowing that the deceased was in possession of such a deadly weapon, should have waited for the weapon to be drawn before he himself used his knife, as he did. Under the instruction given by the able trial judge, the defendant would not have been justified in cutting the deceased unless the deceased was advancing with the knife open at the time the mortal blow was given. The defendant requested that the jury be instructed that if they found from the evidence and the defendant's statement that when the defendant cut and killed the deceased the defendant honestly believed, as a reasonably courageous man, that the deceased was advancing on the defendant with an open knife for the purpose of killing or attacking the defendant with such knife and doing the defendant great bodily harm, and the defendant honestly believed that his life was in danger from such attack by the deceased, then the defendant would have the right to defend himself and to take the life of the deceased, even though as a matter of fact the deceased was not actually intending to kill or cut the defendant with such knife. I

am of the opinion that the defendant was entitled to have this instruction or its substance given in charge to the jury, in view of the defendant's statement and some of the evidence in the record.

In *Hall* v. *State,* supra, Mr. Justice Holden, delivering the opinion of the court in a case very similar to that now before us, held: "The evidence showed that the deceased died from a wound inflicted with a knife. The defendant in his statement to the jury, among other things, stated in substance the following: He went to a house where the deceased was and told him. Mr. Singletary said for the deceased to stay away from there. Mr. Singletary had been talking to him, and told 'me to tell you to stay away from here.' The deceased cursed the defendant, and said, 'I will burst your brains out; I will kill you.' The deceased got a chair after the defendant and tried to kill him, and told him that he would see him again, that he was going to kill him, and said 'that he would see me again, and that he was going to kill me.' The defendant went to Mr. Singletary's, and while talking to him the deceased came up and the defendant hit him with a baseball bat, which the deceased took from him and hit the defendant on the arm several times. The defendant struck at him with a knife. The deceased wheeled around and struck. The deceased ran off a few steps and fell. The defendant further stated: 'I forgot, gentlemen, he had a knife; he was fixing to kill me with the knife —he had a knife in his hand—he tried to cut me with the knife —he had a good knife; that is the reason I had to do what I did; he tried to cut me—tried to kill me with that knife—had a good knife too—I had a little old sorry knife—couldn't hurt nothing with it—yes, sir—he had a good knife.' The statement of the defendant was susceptible of the meaning that the deceased had a knife, and to carry out his previous threat 'was fixing to kill' defendant with it when defendant struck him with the bat and stabbed him with the knife. The statement made by the defendant was such as authorized a charge by the court of the principles of law embodied in sections 70 and 71 of the Penal Code, and it was accordingly error for the court to refuse to give in charge the following, as set forth in a written request timely presented by the defendant's counsel: 'If you believe from all the circumstances of the case that the situation was such as to excite the fears of a reasonable man, in the situation of the defendant,

that a felony was about to be committed upon him, or that his life was in danger, and that the defendant acted under those fears and not in a spirit of revenge and took the life of the deceased, then you should acquit him, and you should do so notwithstanding you may believe the defendant was in no danger and that if he had not acted the deceased would not have committed any felony upon him. It is not necessary that there should have been any actual danger of a felony about to be committed on the defendant, provided the defendant, acting under the fears of a reasonable man, believed in good faith that he was in such danger.' " As pointed out by Mr. Justice Holden, the court did read sections 70 and 71 of the Penal Code to the jury. In the case at bar no reference whatever was made in the charge to the principles embodied in these sections; but in the *Hall* case the court ruled that "merely reading these sections to the jury did not sufficiently instruct them as to the law applicable to the issues involved, where by appropriate written request the court was asked to apply the abstract law embodied in such sections to the issues in the case," citing *Waller* v. *State,* 100 *Ga.* 320 (28 S. E. 77).